**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | |
|---|---|
| Thomas P. Lowe, ) | |
| ) | |
| Plaintiff, ) | C.A. No.: 4:15-cv-669-PMD-TER |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Carolyn W. Colvin, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter comes before the Court on Plaintiff Thomas Lowe's objections to the Magistrate Judge's report and recommendation ("R & R") (ECF Nos. 18 & 16). The Magistrate Judge recommends that the Court affirm the Commissioner's final decision denying Lowe's claim for social security benefits. For the reasons stated herein, the Court sustains one objection, reverses the Commissioner's decision, and remands to the agency.

**STANDARD OF REVIEW**

The Magistrate Judge makes only a recommendation to this Court. The R & R has no presumptive weight, and the responsibility for making a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). Parties may make written objections to the Magistrate Judge's proposed findings and recommendations within fourteen days after being served with a copy of the R & R. 28 U.S.C. § 636(b)(1). This Court must conduct a de novo review of any portion of the R & R to which a specific objection is made, and the Court may accept, reject, or modify the Magistrate Judge's findings and recommendations in whole or in part. *Id.* Additionally, the Court may recommit the matter to the Magistrate Judge with instructions. *Id.* A party's failure to object is taken as the party's agreement with the Magistrate

Judge's conclusions. *See Thomas v. Arn*, 474 U.S. 140 (1985). Absent a timely, specific objection—or as to those portions of the R & R to which no specific objection is made—this Court "must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

## **DISCUSSION**[1]

Lowe makes several objections. The Court need address only one of them.

As one would expect in a disability proceeding, the evidence before the ALJ included Lowe's medical records. Many of those records consisted of notes that Lowe's primary care providers made of his treatment visits. The notes cover visits over the course of several years. The ALJ frequently cited them throughout his written decision and used them in his determination of Lowe's residual functional capacity.

The notes for several of Lowe's visits contain glaring contradictions. For example, on April 27, 2010, Lowe presented to his physician for what Lowe described as chronic neck and back pain; increasing pain in both of his feet; tingling and numbness in his hands, legs, and feet; burning and tingling in other parts of his body; and dizziness. Lowe said his back and neck were constantly in pain, and he described it feeling like someone was stabbing him in the back with a knife and then twisting it. Elsewhere, however, the notes state Lowe denied having any joint pain, muscle pain, dizziness, or other symptoms. As the Magistrate Judge correctly pointed out, similar contradictions appear in the notes for Lowe's primary care visits in July and December 2010.[2]

---

1. Neither party has objected to the facts, procedural history, legal standard, or standard of review set forth in the R & R. Seeing no error in those portions of the R & R, the Court adopts them.

2. The notes for Lowe's March 2009 visit also contain contradictory statements about whether he complained of neck and back pain.

The ALJ highlighted those contradictions in his written decision. For example, in his discussion of Lowe's July 2010 visit, the ALJ recited that Lowe presented with complaints of chronic back pain, arm and finger numbness, and headaches. The ALJ then wrote the following:

> Despite the subjective complaints, the claimant continued to deny several symptoms, and the physical exam remained largely normal. For instance, at this visit, the claimant denied weight change, malaise, *joint pain*, swelling, stiffness, weakness, *myalgias* [sic], *headache*, poor vision, poor hearing, tinnitus, breathing problems, syncope, paresthesias [sic], cardiac problems, and gastrointestinal problems, among others. The claimant denied dysuria, polyuria, polydipsia, appetite change, and heat/cold intolerance. He denied *numbness,* dizziness, depression, anxiety, and memory changes.

(ALJ Decision dated May 24, 2013, ECF No. 9-3, at 16 (emphasis added).) The ALJ drew similar contrasts in his discussion of the April and July 2010 visits. Those contrasts, as well as other portions of the ALJ's decision, demonstrate that the ALJ chose to believe the symptom denials over Lowe's complaints. The ALJ found those contradictions, and those symptom denials, to be significant to his conclusion that Lowe is not disabled.

In each of the three sets of visit notes, the symptom denials appear as a list under the heading "review of systems." Lowe contends it was improper for the ALJ to rely on those lists because they are flatly inconsistent with the stated purposes of his visits and with the descriptions of his pain found elsewhere in the notes. As mentioned above, the Magistrate Judge recognized the notes' contradictions. Nonetheless, the Magistrate Judge concluded, any potentially improper reliance by the ALJ on those contradictory notes was harmless because the ALJ also considered the notes of Lowe's complaints, as well as other portions of the record. Lowe now objects to that harmless-error conclusion.

The Magistrate Judge stopped short of stating that the ALJ erred, instead assuming error in the harmlessness analysis. This Court, however, does find that the ALJ erred in two respects. The first involves the ALJ's use of the symptom denials to discount Lowe's "subjective

3

complaints" of pain and other problems.  To be clear, the ALJ did not err merely by relying on internally contradictory pieces of evidence, nor was it error *per se* to give the denial statements more weight than the complaints.  *Cf. Vo v. Astrue*, 518 F. Supp. 2d 715, 727 (D.S.C. 2007) ("[W]hen the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them . . . ." (citation and quotation marks omitted)).  However, ALJs cannot resolve conflicts in the evidence arbitrarily or using improper reasons.  *See, e.g.*, *Mullinax v. Colvin*, No. 5:13-CV-00169-GCM, 2014 WL 6997766, at *5 (W.D.N.C. Dec. 10, 2014) (stating ALJ could not arbitrarily choose one piece of conflicting evidence over another without explaining the choice); *Vo*, 518 F. Supp. 2d at 727 (indicating district court's review includes determining whether the ALJ's reasons for rejecting evidence were improper).  To ensure that ALJs are not making such unreasoned or ill-reasoned choices, reviewing courts require ALJs to explain their basis for discounting or rejecting otherwise probative evidence.  *See Vo*, 518 F. Supp. 2d at 727 (stating ALJs must explain why they reject probative medical evidence "so that a reviewing court can determine whether the reasons for rejection were improper" (citation and quotation marks omitted)); *see also Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016) (stating remand may be appropriate where "inadequacies in the ALJ's analysis frustrate meaningful review.").  The ALJ erred here by not providing that explanation.  He may well have had a legitimate basis for choosing to believe the terse lists of denied symptoms over Lowe's descriptions of his ailments, which the notes often quote.  However, that basis is not apparent, frustrating this Court's review.

      The second, more substantive error is that, in all three of Lowe's 2010 doctor visits, the ALJ misstated what symptoms were listed as denied.  The ALJ wrote that Lowe denied paresthesia and numbness in the April and July visits and that Lowe denied weight change in the

4

December visit. The treatment notes, which the ALJ cites as support for those statements, do not say any of that.[3]

The Court cannot find those errors harmless. The ALJ relied on the symptom denial lists at several key points in his written decision. He referred to them twice in support of his no-impairment finding at step three of his analysis. In his analysis of residual functional capacity, the ALJ stated that the notes "helped to define" Lowe's limitation, and he relied on the notes to write that Lowe "consistently denied joint pain" throughout the relevant time period. (ALJ Decision, ECF No. 9-3, at 24.) The ALJ also stated that the notes themselves, as well as their inconsistencies, supported his conclusions on residual functional capacity and his conclusion that Lowe's complaints about his ailments were "only partially credible." (*Id.*) Indeed, the ALJ appears to have relied on the treatment notes more than any other type of evidence in the record.

The Magistrate Judge based his harmless-error conclusion on the fact that the ALJ considered other evidence, including Lowe's complaints of pain and other symptoms. However, the ALJ did not consider Lowe's complaint independently of the symptom-denial evidence. Rather, he used the symptom-denial evidence to discount Lowe's credibility and to undercut his subjective complaints in the treatment notes. Because the ALJ viewed Lowe's complaints and credibility through the lens of the symptom-denial evidence, the ALJ's consideration of the entire record cannot make his errors harmless.

Using the symptom denials as a lens for the assessment of other evidence is all the more problematic because, as discussed above, the ALJ misstated what symptoms Lowe purportedly denied having. In April 2010, Lowe complained of tingling and numbness in his hands, legs, and feet; at his July 2010 appointment, he complained of numbness in his hand and arm. After

---
3. The ALJ also wrote that, in a July 2009 visit, Lowe denied having headaches. Lowe's physician's notes do not support that statement.

inaccurately stating that Lowe denied having those symptoms, the ALJ described the treatment notes as containing inconsistent statements from Lowe about his symptoms. Thus, the ALJ's determination that the notes contained inconsistencies—a determination that informed the ALJ's decisions on impairment, residual functional capacity, and credibility—was based at least in part on a mistaken understanding of the evidence.

Given the ALJ's extensive reliance on the notes, this Court cannot affirm the Commissioner's decision despite the ALJ's errors. Accordingly, the Court sustains Lowe's objection and respectfully declines to follow the Magistrate Judge's recommendation. On remand, the ALJ shall reevaluate all matters affected by the inaccurate reading of the medical records, and he shall explain his basis for resolving any conflicts in the evidence that he may find.[4]

## CONCLUSION

For the reasons given above, it is **ORDERED** that Lowe's objections are **SUSTAINED IN PART**, that the Commissioner's final decision is **REVERSED** under sentence four of 42 U.S.C. § 405(g), and that this matter is **REMANDED** to the agency for further proceedings.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**September 14, 2016**
**Charleston, South Carolina**

___
4. The Court expresses no opinion as to what the agency should ultimately conclude on remand. The Court also has not considered any of Lowe's other assertions of error by the ALJ or by the Magistrate Judge.

6